CHARLES WARNER, JR., Plaintiff v. WARNER COMPANY, a Delaware corporation, Defendant.

(*April* 17, 1962.)

LYNCH, J., sitting.

*James M. Tunnell, Jr.,* and *William S. Megonigal, Jr.,* (of Morris, Nichols, Arsht and Tunnell) for Plaintiff.

*John Van Brunt, Jr.,* and *E. Dickinson Griffenberg, Jr.,* (of Killoran and Van Brunt), and *Schnader, Harrison, Segal* and *Lewis* (of the Philadelphia Bar), of Counsel, for Defendant.

Superior Court for New Castle County, No. 488, Civil Action, 1961.

LYNCH, J.:

Plaintiff, who alleged he was a director of defendant corporation, filed his complaint in this action on April 6, 1961, seeking to enforce his rights to purchase common share of defendant, pursuant to an existent Option Agreement. On May 15, 1961 plaintiff propounded 33 interrogatories to de-

fendant. Defendant filed no written objection to these interrogatories.

Defendant's answer to the complaint was filed on June 1, 1961. The answer included a counterclaim for $2,750,000, allegedly sustained by the defendant because of plaintiff's alleged negligence as an officer and director of defendant, with respect to an investment defendant made in a company called Atlantic Prestressed Concrete Company. On June 2, 1961 plaintiff propounded a second set of 70 additional interrogatories to defendant. Defendant filed no objection to these interrogatories.

When plaintiff made reply to defendant's counterclaim it served notice of Trial by Jury. In Delaware jury trials are held at the March, September and December Terms of Court, but not at the June Term of Court. This is significant in this sense. It is evident from the answers which plaintiff sought by his interrogatories that he contemplated further discovery upon receipt of defendant's answers; consequently, had defendant submitted its answers on the scheduled date of January 29, 1962, it is most unlikely that the case would have been set for trial at the March 1962 Term. The next trial term is the September 1962 Term.

Settlement discussions thereafter ensued between the parties and there were several extensions of time granted defendant by which defendant's time for answering the interrogatories was deferred until October 27, 1961.

During this settlement period defendant furnished some of the information sought by plaintiff's interrogatories. These settlement discussions came to an end late in October, 1961.

The counsel for defendant, who was familiar with the entire proceedings and who acted for the defendant, became involved in the final stages of preparation for the trial and the trial of an anti-trust case, pending in the United States

District Court for the Eastern District of Pennsylvania; he was sole attorney for the plaintiff in that anti-trust case.

On November 21, 1961, plaintiff's attorneys noticed defendant under Rule 37 (a), *Del. C. Ann.*, for entry of an order compelling defendant to answer all interrogatories. On November 30, 1961 the parties stipulated (a) that defendant should have until December 28, 1961 to answer interrogatories and (b) that plaintiff's motion should be stayed "until such time as defendant may have failed to answer said interrogatories within the time" fixed by the stipulation. A second stipulation further extended defendant's time to answer interrogatories "to and including January 29, 1962"; this stipulation likewise stayed plaintiff's motion.

Trial of the anti-trust case commenced November 27, 1961 and continued from day to day thereafter, and ended March 29, 1962. The trial required all of counsel's time, even over week ends. It seems clear that plaintiff was aware of defendant's counsel's continued engagement in this anti-trust case.

An examination of the pleadings and of the interrogatories point out clearly that the transactions involved in this action are complex and that the preparation of answers to the interrogatories would require a thorough familiarity with many inter-corporate transactions which transpired over a period of about four years, and involved numerous contracts in which plaintiff had been concerned in their making.

When it became apparent to defendant's counsel, late in January of 1962, that the above mentioned anti-trust case would require further time for its completion, this defendant's counsel who was familiar with the facts necessary to answer plaintiff's interrogatories in this case, requested other members of his firm to proceed to study the case and prepare answers to plaintiff's interrogatories so that plaintiff would not be further delayed in receiving the answers. Seemingly this

was not made known to plaintiff. Just why defendant's counsel did nothing to advise plaintiff's counsel is not clear; courtesy, if nothing else, required defendant's counsel to notify plaintiff's counsel of what was transpiring; possibly it would have obviated plaintiff filing its motion, premised on Rule 37(d).

Because of lack of familiarity on the part of these lawyers with the records, as well as the issues of this case, preparation of the answers was not completed until February 8, 1962, on which date they were served and filed.

When defendant's answers had not been received by February 2, 1962, plaintiff filed a motion that day, based on Rule 37(d), asking the Court to enter "judgment by default against defendant, upon the ground that defendant has failed to serve answers to interrogatories * * * after proper service of such interrogatories." In the meantime, as mentioned above, defendant completed, served and filed its answers on February 9, 1962.

Upon presentation of this motion, the Court, on request of plaintiff, fixed a brief schedule and the motion came on for argument March 30, 1962.

No showing is made by plaintiff that he has been prejudiced by the 10 days delay on defendant's part in filing the answers. The most that can be said is plaintiff's further discovery may have been delayed.

Plaintiff's request to this Court is that, in the exercise of its discretion, the Court should take the most extreme step, provided in Rule 37(d), because of defendant's delay of some nine or ten days in filing its answers to plaintiff's interrogatories. Defendant argues that the circumstances, appearing from the affidavits filed with the Court, do not justify the Court granting the relief sought. No explanation is proffered by plaintiff why it did not first present and have the Court pass on its first motion, premised on Rule 37(a), for an Order

to compel defendant to prepare and serve its answers. It may be said in passing that plaintiff was aware of the problems which plagued defendant's counsel in the preparation of the answers to plaintiff's interrogatories; it had recognized these problems by agreements and stipulations extending the time for filing the answers.

I can find no "wilfullness" on defendant's part in the delay in filing its answer, although I do not approve defendant's failure to keep plaintiff's counsel apprised of the difficulties encountered by defendant and its counsel. I specifically do not approve the conduct of defendant's counsel in not contacting plaintiff's counsel and requesting further time, or moving for a further extension of time for filing the answers, if necessary, when it became apparent that the answers could not be served and filed within the time that had theretofore been fixed by the stipulations of the parties. I can well understand how and why plaintiff felt irked by what to him may have appeared to be an unexplained delay in the receiving of answers; what happened, however, in light of all circumstances does not justify the Court granting the extreme relief which plaintiff sought.

This Court in *Williams v. Hall*, 4 *Storey* 350, 176 *A*. 2d 608 (November 13, 1961) ruled, 4 *Storey* 364, 176 *A*. 2d at 616, that its power under Rule 37 to grant a default judgment for failure to make discovery is discretionary, "and such discretion should be exercised so that cases are decided on their merits and not on technicalities". It was noted (*Id.*) that:

"* * * it seems clear from an analysis of Rule 37 that the Framers of the Rules intended that the time schedule set out in the Rules, particularly Rule 37, should be considered in their interpretation. Rule 37(a), timewise, comes before Rule 37(d) and this has some importance."

Continuing, the Court further noted under the facts presented in the cited case:

"* * *, the proponent of the interrogatories should invoke Rule 37 (a) by first moving for an order to compel his adversary to answer the interrogatories before invoking the provisions of Rule 37(d) and seeking sanctions."

Such a course always seems desirable. In a footnote appearing on the same page the Court observed:

"By doing this, a party lays the ground work for demonstrating the 'wilfullness' on the part of the adversary so as to justify imposition of sanctions as authorized by Rule 37(d)."

Rule 37(a) refers to the "refusal of a party to answer" interrogatories, and this portion of the Rule authorizes entry of an order "compelling an answer". Rule 37(d) states "if a party * * * fails to serve answers to interrogatories" the Court "may" impose the sanctions therein provided. It appears, *Williams v. Hall*, 176 A. 2d at 615, that Professor Moore is cited as seemingly taking the position that there must be wilfullness on the part of a party. That position is undoubtedly sound and I accept such position.

The Court, however, is not prepared to go so far as to be understood that a motion under Rule 37(a) is always necessary; it may otherwise appear from a record that a party to the litigation is so unmindful of his obligation to adversary and the Court, as to justify the Court finding wilfullness and imposing sanctions. Here, however, the most that plaintiff has shown is that defendant had "failed" to answer the interrogatories and without making a showing that such failure was prejudicial to plaintiff's rights.

Under the facts appearing in the action, plaintiff's motion for the sanctions sought under Rule 37(d) is denied. An Order to this effect may be presented.